UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**THE TRUSTEES OF THE MASONIC HALL AND
ASYLUM FUND,**

                              Plaintiffs,

        v.                                                    5:84-CV-991 (HGM)


**MIKE LEAVITT*, as Secretary of the
United States Department of Health and Human
Services, JOHN PLUMLEY, individually and as
County Executive of Oneida County, MICHAEL
J. NASSAR, individually and as Commissioner
of Social Services of Oneida County, ONEIDA
COUNTY, a municipal corporation, and CESAR
PERALES, individually and as Commissioner of
Social Services of the State of New York,**

                              Defendants,

*substituted pursuant to Rule 25(d)

_____

**THE TRUSTEES OF THE MASONIC HALL AND
ASYLUM FUND,**

                              Plaintiffs,

        v.                                                    5:84-CV-992 (HGM)


**JOHN PLUMLEY, individually and as
County Executive of Oneida County, MICHAEL
J. NASSAR, individually and as Commissioner
of Social Services of Oneida County, ONEIDA
COUNTY, a municipal corporation, CESAR
PERALES, individually and as Commissioner of
Social Services of the State of New York, and
MIKE LEAVITT*, as Secretary of the
United States Department of Health and Human
Services.**

                              Defendants.

*substituted pursuant to Rule 25(d)

_____

**APPEARANCES:**                                   **OF COUNSEL:**

BOND, SCHOENECK & KING                    EDWARD R. CONAN, ESQ.

Attorneys for Plaintiff
One Lincoln Center
Syracuse, New York 13202-1355

HONORABLE GLENN T. SUDDABY          WILLIAM F. LARKIN, ESQ.
UNITED STATES ATTORNEY FOR THE       Assistant United States Attorney
NORTHERN DISTRICT OF NEW YORK
Attorney for Defendant Mike Leavitt
P.O. Box 7198
100 South Clinton Street
Syracuse, New York 13261-7198

OFFICE OF THE GENERAL COUNSEL        DAVID A. RAWSON, ESQ.
DEPARTMENT OF HEALTH AND             Assistant Regional Counsel
HUMAN SERVICES
ANNETTE H. BLUM, ESQ.
CHIEF COUNSEL
Attorney for Defendant Tommy Thompson
26 Federal Plaza, Room 3908
New York, New York 10278

HONORABLE ELLIOT SPITZER             ROGER B. WILLIAMS, ESQ.
ATTORNEY GENERAL FOR THE             Assistant Attorney General
STATE OF NEW YORK
Attorney for Defendant Cesar A. Perales
615 Erie Boulevard West, Suite 102
Syracuse, New York 13204-2455

ANIELA J. CARL, ESQ.
CHIEF ATTORNEY ONEIDA COUNTY
DEPARTMENT OF SOCIAL SERVICES
Attorney for Defendants John Plumley,
Michael J. Nassar and Oneida County
800 Park Avenue
Utica, New York 13501

**HOWARD G. MUNSON**
**Senior United States District Judge**

## MEMORANDUM - DECISION AND ORDER

## INTRODUCTION

This matter is composed of two actions: <u>The Trustees of the Masonic Hall and Asylum Fund</u>

2

v. Leavitt, *et al*, 84-CV-991, and The Trustees of the Masonic Hall and Asylum Fund v. Plumley, *et al*, 84-CV-992.[1]  Plaintiffs commenced both actions on July 17, 1984.  Although the two cases were never consolidated, because both actions arose from the same set of facts and circumstances, they have become permanently affiliated and essentially interchangeable.  In fact, Plaintiffs simultaneously filed amended complaints against the same federal, state, and county Defendants.  Consequently, the Court examines both actions and the motions now stemming therefrom coincidentally.

Presently before the Court are Defendants' unopposed[2] motions: the Secretary of the Department of Health and Human Services' motion to dismiss Plaintiffs' amended complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure, *see* 84-CV-991, Dkt.

---

[1]In filing their complaints, Plaintiffs named then-Secretary of the Department of Health and Human Services Margaret M. Heckler as a defendant.  Since Plaintiffs filed their complaint, Mike Leavitt, among others, have succeeded Margaret M. Heckler as Secretary of the Department of Health and Human Services.  The Court substitutes Mike Leavitt for Margaret M. Heckler as a party in this action.  *See* Fed.R.Civ.P. 25(d)(1) ("When a public officer is party to an action in his official capacity and during its pendency dies, resigns, or otherwise ceases to hold office, the action does not abate and the officer's successor is automatically substituted as a party . . . An order of substitution may be entered at any time, but the omission of such an order shall not affect the substitution.").

[2]As revealed by their respective dockets, the cases suffer from a long and tortured history.  Although the parties notified the Court of their intent to partake in settlement discussions after Defendants filed their dispositive motions, *see* 84-CV-992, Dkt. Entry December 10, 2001, Plaintiffs never filed opposition papers and Defendants' motions stand unopposed.  In accordance with the Local Rules, the Court deems Plaintiffs's failure to oppose the motions as consent to grant the motions.  *See* N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown.").

No. 107, Notice of Mot.;Cesar A. Perales' motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, *see* 84-CV-992, Dkt. No. 107, Notice of Mot.;Oneida County's, John Plumley's, and Michael J. Nassar's motions for partial judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure, *see* 84-CV-992, Dkt. No. 110, Notice of Mot., and for an order compelling Plaintiffs to answer certain interrogatories and produce certain documents pursuant to Rule 37(a) of the Federal Rules of Civil Procedure. *See* 84-CV-992, Dkt. No. 112, Notice of Mot.

## BACKGROUND

### I.      The Parties and the Procedural History

Plaintiffs, the Trustees of the Masonic Hall and Asylum Fund, are the governing body of the Masonic Hall and Asylum Fund, a fraternal nonprofit organization that operates the Masonic Home, a 388 bed nursing home located in Utica, New York.  The Plaintiffs' nursing home, which is certified as a Medicaid provider by the New York State Department of Social Services, attracts patients not only from Oneida County, where it is situated, but also from other counties throughout New York State and other states throughout the United States.  On July 18, 1984, Plaintiffs filed complaints against the Secretary of the United States Department of Health and Human Services, Margaret M. Heckler (the "Secretary" or "Federal Defendant"), John Plumley, Executive for Oneida County, Michael J. Nassar, Commissioner of Social Services of Oneida County, Oneida County, (collectively, the "County Defendants") and Cesar Perales, Commissioner of Social Services of the State of New York, (the "State Defendant") seeking declaratory and injunctive relief, compensatory and punitive damages, and remedial fines.  With Defendants' consent, Plaintiffs subsequently amended both complaints in December 1984.  As to Secretary Leavitt, Plaintiffs seeks declaratory

and permanent injunctive relief, or more specifically, an affirmative injunction or mandamus. Plaintiffs asks the Court to direct Secretary Leavitt to investigate the practices of New York State and Oneida County, report to the Court the results of such investigation as well as any decision not to withhold federal monies from New York State, and to promulgate various regulations.  *See* 84-CV-991, Am. Compl., Ad Damnum Clause, ¶ I.  As to the County and State Defendants, Plaintiffs seeks: (1) a declaration that their conduct violates federal and state law; (2) an injunction against the continuation of such alleged illegal conduct, requiring payment of pending and future applications of Medicaid-eligible residents of Plaintiffs and Medicaid benefits to residents who are entitled to same pursuant to fair hearings and/or stipulations, *see* 84-CV-992, Am. Compl. at ¶ 45; (3) remedial fines to assure compliance, *see* 84-CV-992, Am. Compl at ¶ 62; and, (4) compensatory damages, *see* 84-CV-992, Am. Compl. at ¶ 56.  In addition, as to the County Defendants, Plaintiffs seeks punitive damages.  *See* 84-CV-992 Am. Compl. at ¶ 60.

The Federal Defendant moved to dismiss the amended complaints in both actions, and the Court denied these motions from the bench on December 9, 1985.  *See* 84-CV-992, Dkt. No. 90, Pl.'s Mem. of Law in Opp'n at 3.  From approximately May 1986, through the present, the parties have engaged in protracted, but ultimately unsuccessful, settlement negotiations.  Additional claims and various motions, however, punctuated the settlement negotiations.  The County Defendants subsequently amended their answers so as to assert counterclaims, which the Court dismissed by Memorandum-Decision and Order dated July 27, 1988.  *See* Trustees of the Masonic Hall and Asylum Fund v. Plumley, 1988 WL 79205 (N.D.N.Y. July 27, 1988).  In June of 1989,  the State Defendants moved to dismiss, and the County Defendants moved for partial summary judgment; in August of 1989, the Federal and County Defendants moved to compel Plaintiffs to answer

interrogatories and produce certain documents; and, in December 1998, the Federal, State and County Defendants withdrew all of the then-pending motions. The Federal, State, and County Defendants, however, have essentially renewed their previously withdrawn motions.

In March of 1999, the State Defendant moved pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings and to dismiss Plaintiffs's action in its entirety while the County Defendants moved pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for partial judgment on the pleadings and to dismiss Plaintiffs's action in its entirety. In June 1999, the Federal Defendant followed suit and moved pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Plaintiffs's amended complaint for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted.

## II.     The Parties' Dispute

The Masonic Home was enrolled as a Medicaid provider in 1975. At the time Plaintiffs filed their amended complaint, the Masonic Home was providing services to approximately 309 Medicaid eligible residents. The Masonic Home's practice was to apply for Medicaid benefits on behalf of residents when their own resources had been exhausted and to continue to provide services, subject to reimbursement, while the application was pending. Plaintiffs allege generally that from 1975 until the filing of their amended complaint, they submitted numerous applications for Medicaid on behalf of their residents, and that the County Defendants denied many of these applications on frivolous grounds. Plaintiffs further allege that the County Defendants failed to comply with adverse fair hearing decisions, with their own stipulated agreements to accept applications, and with 18 NYCRR § 311.3(c)(1) governing the payment of benefits pending inter-district jurisdictional disputes. Plaintiffs allege that Defendants wrongfully denied and/or delayed granting Medicaid benefits to

6

certain residents who came to the facility from out of state. This action presents a challenge to the alleged failure of New York State and Oneida County to provide certain Medicaid payments to persons who moved from out of the state into residential health care facilities maintained by Plaintiffs.

## DISCUSSION

I.  **Standards of Review**

*A.  Subject Matter Jurisdiction*

Challenges to subject matter jurisdiction pursuant to Rule 12(b)(1) may contest "either the facial sufficiency of the pleadings in the complaint or the existence of subject matter jurisdiction in fact." Dow Jones & Co. v. Harrods, Ltd., 237 F.Supp.2d 394, 404 (S.D.N.Y. 2002), *aff'd*, 346 F.3d 357 (2d Cir. 2003). As in a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), "[i]n a facial challenge, the [C]ourt accepts as true the uncontroverted factual allegations in the complaint." Id.; *see also* Shipping Fin. Servs. Corp. v. Drakos, 140 F.3d 129, 131 (2d Cir.1998). "Under [Rule 12(b)(1) ], the court must accept all factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the Plaintiffs." The Second Circuit, however, has also held that the district court need not–indeed, must not–accept all allegations in the complaint as true. *See* Filetech S.A. v. France Telecom S.A., 157 F.3d 922, 932 (2d Cir.1998) ("[I]t was error for the district court to accept the mere allegations of the complaint as a basis for finding subject matter jurisdiction . . . . Our rule is that, on a challenge to the district court's subject matter jurisdiction, the court may resolve disputed jurisdictional fact issues by reference to evidence outside the pleadings, such as affidavits.") (quotations omitted). The preliminary showing that must be made by the Plaintiffs is not meant to be overly burdensome,

"allowing for subject matter jurisdiction so long as 'the federal claim is colorable.'" Cromer Fin. Ltd. v. Berger, 137 F.Supp.2d 452, 467 (S.D.N.Y. 2001) (quoting Savoie v. Merchants Bank, 84 F.3d 52, 57 (2d Cir. 1996)). "In a close case, the factual basis for a court's subject matter jurisdiction may remain an issue through trial, and, if and when doubts are resolved against jurisdiction, warrant dismissal at that time." Europe & Overseas Commodity Traders, S.A. v. Banque Paribas London, 147 F.3d 118, 121 n. 1 (2d Cir.1998) (citation omitted).

### B.    Failure to State a Claim

Pursuant to the liberal pleading requirements of the Federal Rules of Civil Procedure, Plaintiffs need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." FED.R.CIV.P. 8(a)(2). Accordingly, dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) is proper only where "it appears beyond doubt that the Plaintiffs can prove no set of facts in support of his claim which would entitle him to relief." Harris v. City of New York, 186 F.3d 243, 247 (2d Cir.1999). In making this determination, a court must accept all factual assertions in the complaint as true and draw all reasonable inferences in favor of the Plaintiffs. See Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d Cir. 1997).

In deciding a motion to dismiss, a court may review documents integral to the complaint upon which the Plaintiffs relied in drafting the pleadings, as well as "any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000) (citing Cosmas v. Hassett, 886 F.2d 8, 13 (2d Cir. 1989)); see also Schnall v. Marine Midland Bank, 225 F.3d 263, 266 (2d Cir. 2000).

### C.    Judgment On The Pleadings

"The standard for granting a Rule 12(c) motion for judgment on the pleadings is identical

to that of a Rule 12(b)(6) motion for failure to state a claim." Patel v. Contemporary Classics of Beverly Hills, 259 F.3d 123, 126 (2d Cir. 2001); *see also* FED.R.CIV.P. 12(h)(2) ("[a] defense of failure to state a claim upon which relief can be granted . . . may be made . . . by motion for judgment on the pleadings").  "[T]he district court must accept all allegations in the complaint as true and draw all inferences in the non- moving party's favor." Patel, 259 F.3d at 126.  However, "conclusions of law or unwarranted deductions of fact are not admitted." First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 771 (2d Cir. 1994) (internal quotation and citation omitted).  The motion should be granted if the court is satisfied that the complaint cannot state any set of facts that would entitle the Plaintiffs to relief.  Patel, 259 F.3d at 126.

In deciding such a motion, a court may consider, in addition to the factual allegations of the complaint, "documents that the Plaintiffss either possessed or knew about and upon which they relied in bringing the suit." Rothman v. Gregor, 220 F.3d 81, 88 (2d Cir. 2000); *see also* Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir. 1991) (even though they were not attached to complaint or incorporated by reference, the court could consider stock purchase agreement, offering memorandum, and warrant on motion to dismiss because Plaintiffs had documents either in their possession or had knowledge of them and relied upon them in bringing suit); Citadel Mgmt. Inc. v. Telesis Trust, Inc., 123 F.Supp.2d 133, 147 n. 3 (S.D.N.Y. 2000) (although Plaintiffs could not submit materials that were not attached or incorporated in complaint in opposing motion, "the contract submitted by the defendants in support of the motion to dismiss may be considered, as Citadel had notice of the document's existence and in fact relied on it in the Amended Complaint").

## II.    The Federal Defendant–Secretary of Health and Human Services

### A.    *Subject Matter Jurisdiction*

1.      28 U.S.C. § 1361

Although Plaintiffs has framed its claim for relief against the federal government in terms of injunctive relief, the Court reads the claim to seek a writ of mandamus directing the Secretary to investigate the State and County's administration of their respective Medicaid programs, and, if necessary, declare them non-compliant with federal law.  The Secretary argues that the United States has not consented to relief Plaintiffs seeks.

Title 28 U.S.C. § 1361 provides that: "The district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiffs."  Section 1361, however, "only provides an additional remedy where jurisdiction already exists." Natural Resources Defense Council, Inc. v. Thomas, 689 F.Supp. 246, 259-60 (S.D.N.Y. 1988); *see also* Doe v. Civeletti, 635 F.2d 88, 94 (2d Cir. 1980) (explaining that § 1361 is not an all-purpose waiver of the Government's immunity from suit).  Thus, § 1361 does not constitute a waiver of sovereign immunity by the United States.  Courts have held that § 1361 does not by itself operate as a waiver of sovereign immunity.  *See, e.g.*, Washington Legal Found. v. U.S. Sentencing Comm'n, 89 F.3d 897, 901 (D.C.Cir. 1996) ("It is well settled that this statute does not by itself waive sovereign immunity.") (citing cases); Lonsdale v. United States, 919 F.2d 1440, 1444 (10th Cir.1990) ("Sovereign immunity is not waived by general jurisdictional statutes such as . . . 28 U.S.C. § 1361."); Coggeshall Dev. Corp. v. Diamond, 884 F.2d 1, 3 (1st Cir. 1989) ("The provisions of 28 U.S.C. § 1361 creating the federal mandamus action do not constitute a waiver of sovereign immunity by the United States."); Smith v. Grimm, 534 F.2d 1346, 1352 n. 9 (9th Cir. 1976) ("We . . . note the bar of sovereign immunity as an additional impediment to Plaintiffs's allegation of mandamus jurisdiction.  [Section 1361] is not a consent to

suit by the sovereign.") (citation omitted); *but see* <u>Drake v. Panama Canal Comm'n</u>, 907 F.2d 532, 534 (5th Cir. 1990) ("[T]he mandamus statute . . . waives, for some purposes, the sovereign immunity of the United States.") (quotations and citations omitted).  However, "[i]f a Plaintiffs seeks a writ of mandamus to force a public official to perform a duty imposed upon him in his official capacity[, under the so-called Larson-Dugan exception to sovereign immunity,] no separate waiver of sovereign immunity is needed."  <u>Washington Legal Found.</u>, 89 F.3d at 901.  The Supreme Court has explained:

> There may be, of course, suits for specific relief against officers of the sovereign which are not suits against the sovereign . . . [W]here the officer's powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are ultra vires his authority and therefore may be made the object of specific relief.

<u>Larson v. Domestic & Foreign Commerce Corp.</u>, 337 U.S. 682, 689, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949).

"Section 1361 'is intended to provide a remedy for a Plaintiffs only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty.'"  <u>Franchi v. Manbeck</u>, 972 F.2d 1283, 1289 (Fed.Cir.1992) (quoting <u>Heckler v. Ringer</u>, 466 U.S. 602, 616, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984)).  Accordingly, mandamus is not granted lightly–it "is a drastic remedy available only in extraordinary situations."  <u>Morelli v. Alexander</u>, 920 F.Supp. 556, 558 (S.D.N.Y. 1996).  A Plaintiffs seeking mandamus relief must demonstrate the following: "(1) [he] has a clear right to the relief sought, (2) [defendant has] a plainly defined and peremptory duty to perform the act in question, and (3) no other adequate remedy is available."  <u>Morelli</u>, 920 F.Supp. at 558.

As to the third element, the parallel nature of the two actions underscores the fact that Plaintiffs has an adequate remedy against the State and County Defendants. Even assuming *arguendo* that the State or County Defendants violated federal law by dilatorily processing Medicaid claims or maintaining an illegal residency standard, Plaintiffs could obtain the relief sought against the State and County Defendants without the parallel action against the Secretary. The court in Ramirez v. Weinberger, 363 F.Supp. 105 (N.D.Ill. 1973) confronted a similar scenario where the Plaintiffs challenged the eligibility standards for children's benefits under the Illinois Aid to Families with Dependent Children ("AFDC") program. The AFDC, like Medicaid, was a cooperative federal-state program administered by participating states according to the general fund requirements embodied in their approved state plans. Because the Secretary of Health, Education and Welfare, the predecessor or forerunner of the Secretary of Health and Human Services, approved the state plan, the Plaintiffs sought relief as against both the Secretary and state defendants. The court dismissed the claims against the Secretary for lack of subject matter jurisdiction under 28 U.S.C. § 1346. With respect to mandamus, the court opined "[w]ithout even reaching the substantial problems of plaintiffs' standing to maintain a mandamus suit against the Secretary and of the doctrine of sovereign immunity, it is clear that plaintiff's remedy against the state officials is adequate to determine the constitutionality of this statute and the propriety of the relief to be granted, if any." Ramirez, 363 F.Supp at 109.

Plaintiffs similarly fail to hurdle the first and second elements, having neither clear right to the relief sought nor a plainly defined peremptory duty that it seeks to compel the Secretary to perform. *See* Your Home Visiting Nurse Services, Inc. v. Shalala, 525 U.S. 449, 457, 119 S.Ct. 930, 935, 142 L.Ed.2d 919 (1999). In Your Home, the Supreme Court explained the Secretary's

Medicare reimbursement duties:

> Under the Medicare Act, Title XVIII of the Social Security Act, 79 Stat. 290, as amended, 42 U.S.C. § 1395 et seq. (1994 ed. and Supp. II), the Secretary of Health and Human Services reimburses the providers of covered health services to Medicare beneficiaries (citations omitted).  A provider seeking such reimbursement submits a yearly cost report to a fiscal intermediary (generally a private insurance company) that acts as the Secretary's agent  (citation omitted).  The intermediary analyzes the cost report and issues a Notice of Program Reimbursement (NPR) determining the amount of reimbursement to which the provider is entitled for the year (citation omitted).  As is relevant here, a dissatisfied provider has two ways to get this determination revised. First, a provision of the Medicare Act, 42 U.S.C. § 1395, allows a provider to appeal, within 180 days, to the Provider Reimbursement Review Board (Board)-an administrative review panel that has the power to conduct an evidentiary hearing and affirm, modify, or reverse the intermediary's NPR determination. The Board's decision is subject to judicial review in federal district court. § 1395 oo (f). Second, one of the Secretary's regulations, 42 C.F.R. § 405.1885 (1997), permits a provider to request the intermediary, within three years, to reopen the reimbursement determination.

525 U.S. at 450-51.  The Plaintiffs had sought a mandamus to order the Secretary's intermediary to reopen its reimbursement determination.  The Supreme Court found that the lower courts properly declined the request reasoning that "[e]ven if mandamus were available for claims arising under the Social Security and Medicare Acts, petitioner would still not be entitled to mandamus relief because it has not shown the existence of a clear nondiscretionary duty, to reopen the reimbursement determination at issue." Your Home, 525 U.S. at 456-57 (citation and internal quotations omitted).

In the case at bar, Plaintiffs seeks to direct the Secretary to investigate the non-federal Defendants' Medicaid practices in quite specific respects with regard to a limited number of applicants residing only in those facilities owned by Plaintiffss. See 84-CV-991, Am. Compl. at ¶¶ 2(1), 67.  The Social Security Act, however, places no such affirmative demands upon the Secretary, but rather directs that if the Secretary finds a failure to substantially comply with any provision of 42 U.S.C. § 1396a.  See 42 U.S.C. § 1396c.  The ordering of a compliance hearing is not within the

mandamus power of the Court.  *See* <u>Arthur C. Logan Memorial Hospital v. Toia</u>, 441 F.Supp. 26, 27 (S.D.N.Y. 1977) (citing <u>Leonhard v. Mitchell</u>, 473 F.2d 709 (2d Cir. 1973)).  "If, after a compliance hearing, the Secretary determines that a State is out of compliance, he may, again within his discretion, withhold part or all payment under Medicaid.  That is his only statutory remedy . . . He cannot compel compliance." <u>Id.</u>

Plaintiffs has not shown that it has a clear right to the relief sought against the Secretary.  The Social Security Act provides an avenue for a state, but neither for an individual recipient nor an individual provider, to petition a Court of Appeals for review of adverse compliance hearing determination.  *See* 42 U.S.C. § 1316(a)(3); 42 C.F.R. § 430.38.

The Secretary also asserts that Plaintiffs lacks standing to assert its claims.  It is well settled that in order to properly invoke federal jurisdiction, a Plaintiffs must satisfy a three-part test.

> First, the Plaintiffs must have suffered an "injury in fact"–an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of . . . . Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

<u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560-61, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).  "It is also mandatory that [these elements] must be satisfied throughout the course of adjudication by the courts." <u>Alexander v. Yale Univ.</u>, 631 F.2d 178, 183 (2d Cir.1980).  Plaintiffs does not demonstrate adequate causation: Oneida County denied Medicaid benefits to certain applicants and the Masonic Home voluntarily chose to assume the possible financial loss attendant upon treating these individuals.  The Secretary is absent from the causal chain.  Furthermore, even assuming that the denial of Medicaid to certain individuals injured Plaintiffs, as noted above, the Secretary cannot compel a state to alter its policies to ensure substantial compliance with the Social

Security Act, but can only reduce or terminate federal payments: the Secretary would not necessarily remedy the injury. While such a sanction might persuade a state to alter its policies, this anticipated result is speculative rather than likely. *See* Linda R.S. v. Richard D., 410 U.S. 614, 618, 93 S.Ct. 1146, 1149, 35 L.Ed.2d 536 (1973). The Court lacks subject matter jurisdiction under 28 U.S.C. § 1361.

> 2.     28 U.S.C. § 1331 and the Administrative Procedure Act, 5 U.S.C. § 702 ("APA")

The federal question statute, 28 U.S.C. § 1331, in combination with the APA, 5 U.S.C. § 702, provides for judicial review of Federal administrative actions. *See* Lunney v. United States, 319 F.3d 550, 557-58 (2d Cir.2003). The APA provides that "a person suffering legal wrong because of agency action or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702. This provision waives sovereign immunity in actions for relief other than money damages against officials acting in their official capacity, concerning "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704. The APA's waiver of sovereign immunity, however, is not unlimited. Judicial review of agency action under the APA is unavailable where "(1) statutes preclude judicial review; or (2) agency action is committed to agency discretion by law." 5 U.S.C. § 701(a). The Secretary argues and the Court agrees: (1) that there has been no final agency action; (2) that except for Plaintiffs's complaint, he was never alerted to or asked to take any action regarding the State and County Defendants' alleged violations; and (3) even assuming *arguendo* that Plaintiffs's allegations are true, Plaintiffs was aggrieved not by any action or failure to act on the part of the Secretary, but rather by the actions of the State and County Defendants. The Court also finds that the action or inaction of which Plaintiffs complains falls within the "agency

discretion" exception of 5 U.S.C. § 701(a)(2).  *See* Columbia-Greene Med. Ctr., Inc. v. Sullivan, 758

F.Supp. 821, 823 (N.D.N.Y. 1991).

An agency action "is committed to agency discretion by law" when the agency's enabling

statute provides no standard for the agency to follow when awarding funds.  To that end, judicial

review "is not to be had if the statute is drawn so that a court would have no meaningful standard

against which to judge the agency's exercise of discretion." Heckler v. Chaney, 470 U.S. 821, 830,

105 S.Ct. 1649, 1655, 84 L.Ed.2d 714 (1985).  The Second Circuit explained the standard for

"agency discretion" as follows:

> As the Supreme Court said in Barlow v. Collins, 397 U.S. 159, 166-67, 90 S.Ct. 832,
> 837-38, 25 L.Ed.2d 192 (1970), judicial review is the rule, and preclusion under
> section 701(a)(1) and (2) the exception; but if clear and convincing evidence can be
> shown that Congress intended to make an agency action unreviewable, then the
> courts are without jurisdiction. Evidence of Congressional intent can, of course, be
> found in many places.  The starting point is the language of the statute granting the
> agency power . . . [W]here the language of the statute is not in itself sufficient
> evidence of whether Congress intended to grant unreviewable discretion, the court
> will look to other indications of congressional intent: the nature of the agency action
> involved, the amount of expertise required, the place of the particular action and of
> judicial review in the overall statutory scheme governing the agency and, of course,
> the legislative history of the statute.

New York Racing Ass'n v. N.L.R.B., 708 F.2d 46, 51 (2d Cir. 1983).  Here, the operative statute,

42 U.S.C. § 1396c provides:

> If the Secretary, after reasonable notice and opportunity for hearing to the State
> agency administering or supervising the administration of the State plan approved
> under this subchapter, finds–(1) that the plan has been so changed that it no longer
> complies with the provisions of section 1396a of this title; or (2) that in the
> administration of the plan there is a failure to comply substantially with any such
> provision; the Secretary shall notify such State agency that further payments will not
> be made to the State (or, in his discretion, that payments will be limited to categories
> under or parts of the State plan not affected by such failure), until the Secretary is
> satisfied that there will no longer be any such failure to comply. Until he is so
> satisfied he shall make no further payments to such State (or shall limit payments to
> categories under or parts of the State plan not affected by such failure).

16

The statute does not require the Secretary to make periodic determinations and invests discretion in the secretary to determine a state's "substantial compliance."  Moreover, the statute contains neither a provision by which a private party may force a decision concerning compliance nor a provision authorizing a citizen to seek court review of a compliance decision.  *See* St. Louis Univ. v. Blue Cross Hosp. Serv., 537 F.2d 283, 289-90 (8th Cir. 1976) ("The conspicuous omission of any provision for judicial review . . . Congress felt that determination of the proper "reasonable charge" was a matter best left to agency expertise.").  The wording and structure of 42 U.S.C. § 1396c indicate that Congress intended to invest in the Secretary unreviewable discretion as to whether to make a compliance determination.  Plaintiffs does not fall within the purview of § 702 of the APA and cannot avail themselves of the APA's waiver of sovereign immunity.  The Court lacks subject matter jurisdiction under 28 U.S.C. § 1331 and the APA.

  B. *Plaintiffs's Demand that the Secretary Promulgate New Regulations*

  In its complaint, Plaintiffs has asked the Secretary to be compelled "to promulgate such regulations as will establish a mechanism whereby [the Secretary] may assure [himself] that the administration of the Medicaid program by state and local official is proceeding properly and efficiently."  Am. Compl. at ¶ 66(b)(iii).  Plaintiffs also asks that the Secretary be directed "to promulgate such regulations as will clearly delineate a procedure whereby Medicaid benefits to otherwise eligible applicants may readily be paid pending decision regarding which state is responsible for payment of such benefits."  Am. Compl. at ¶ 66(b)(iv).  Additionally, Plaintiffs requests for "a judgment declaring that 42 C.F.R. § 435.403, as amended, has retroactive effect" so that New York State will be financially responsible for payments to those twenty-one Masonic Home Medicaid applicants who were allegedly denied benefits in New York State based on out-of-state

residency.  Am. Compl. at ¶¶ 69, 32, 38, and 41.  Given the nature of the request, Plaintiffs is referencing § 435.403(m) which addresses cases of disputed residency and provides that "[w]here two or more States cannot resolve which State is the State of residence, the State where the individual is physically located is the State of residence."  The effective date of § 435.403(m) is July 5, 1984.  49 Fed.Reg. 13527 (Apr. 5, 1984).  Plaintiffs' request that § 435.403(m) be declared retroactively effective is tantamount to a request that it be declared invalid and that the Secretary be compelled to promulgate a new regulation, one with an effective date designed specifically to remedy the violation alleged by Plaintiffs.  Plaintiffs's request is but another request for affirmative relief in the nature of a mandamus and is consequently jurisdictionally barred for the above-described reasons.

The Secretary has no peremptory duty compelling him to enact the regulations demanded by Plaintiffs.  In its amended complaint, Plaintiffs cites only to 42 U.S.C. § 1302.  *See* 84-CV-991, Am. Compl. at ¶ 42.  Section 1302 reads in pertinent part that "the Secretary of Health and Human Services . . . shall make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administration of the functions with which [he] is charged under this chapter."  42 U.S.C. § 1302(a).  The phrase "as may be necessary" strongly suggests that Congress intended to commit such matters to the Secretary's discretion, and thus the Secretary has no mandatory duty to issue any specific regulations including those requested by Plaintiffs.  If the Secretary is to have a rulemaking obligation not found in the general authority of § 1302, it must instead arise as a specific substantive duty under some other provision of the Social Security Act.  Where a statute requires an implementing regulation to be enacted by the Secretary, judicial "review is limited to determining whether the regulations promulgated exceeded the Secretary's statutory

authority and whether they are arbitrary and capricious." Heckler v. Campbell, 461 U.S. 458, 466,

103, S.Ct. 1952, 1957, 76 L.Ed.2d 66 (1983) (citing Herweg v. Ray, 455 U.S. 265, 275, 102 S.Ct.

1059, 1066, 71 L.Ed.2d 137 (1982); Schweiker v. Gray Panthers, 453 U.S. 34, 44, 101 S.Ct., 2633,

2640, 69 L.Ed.2d 460 (1981) ("Congress explicitly delegated to the Secretary broad authority to

promulgate regulations defining eligibility requirements for Medicaid.")).   The Secretary's

unopposed motion to dismiss Plaintiffs's amended complaint for lack of subject matter jurisdiction

and failure to state a claim upon which relief can be granted pursuant to Rules 12(b)(1) and (b)(6)

of the Federal Rules of Civil Procedure is GRANTED.

**III.     The State Defendant-Cesar Perales**

Plaintiffs seek declaratory and injunctive relief against both the State and County Defendants,

specific performance of a Medicaid provider agreement against both the State and County

Defendants, compensatory damages against both the State and County defendants, punitive damages

against the County and fines against both the State and County Defendants.   In their amended

complaint, Plaintiffs allege that the State Defendant allowed the County Defendants to continue to

violate 18 NYCCR § 311.3(c)(1) and that the State Defendant allowed a "fair hearing backlog" to

exist, which delayed final decisions on applications for benefits and caused financial losses.   Perales

moves to dismiss Plaintiffs' claims arguing that: (1) the claims for compensatory damages, fines and

punitive damages and for retrospective injunctive relief are barred by the Eleventh Amendment to

the United States Constitution; (2) all claims accruing before July 18, 1981 are barred by the

applicable statute of limitations; (3) Plaintiffs lack standing to contest the denial of benefits to

individual Medicaid applicants; (4) Plaintiffs' amended complaint fails to state a cause of action

against the State under 42 U.S.C. § 1983; and (5) Plaintiffs have failed to exhaust available state

19

administrative and judicial remedies.  84-CV-992, Dkt. No. 108, State's Mem. of Law at 1-2.

    *A.*    *The Eleventh Amendment Bars Plaintiffs' Claims for Retroactive Medicaid Benefits,*
          *Compensatory Damages, Punitive Damages and Retroactive Declaratory Relief*

The Eleventh Amendment to the United States Constitution states that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  The Eleventh Amendment bars a suit against the state in federal court unless the state consents to being sued or Congress legislatively overrides a state's immunity.  Huang v. Johnson, 251 F.3d 65, 69 (2d Cir.2000).  The state's immunity extends to state officials "act[ing] on behalf of the state" when the state is the "'real, substantial party in interest.'"  Id. at 69-70 (citing Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddie, Inc., 506 U.S. 139, 142-47 (1993) and quoting Pennhurst State School and Hosp. v. Halderman, 465 U.S. 89, 101-02 (1984)); Kentucky v. Graham, 473 U.S. 159, 169 (1985); Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir.2003) (holding that the Eleventh Amendment will bar recovery for money damages in a suit "against state officials in their official capacities."); Estes-El v. Town of Indian Lake, 954 F.Supp. 527 (N.D.N.Y. 1997) (explaining that the Eleventh Amendment barred arrestee's suit seeking monetary damages under §§ 1983 and 1985(3)).  Because New York has not waived its immunity for official-capacity § 1983 and § 1985(3) claims, and because Congress has not purported to abrogate state immunity in § 1983 and § 1985(3) suits, *see* Will v. Mich. Dept. of State Police, 491 U.S. 58, 65-66 (1989) (holding that the State and its agencies are not "persons" within the meaning of § 1983), both the state and the individual Defendants in their official capacities are immune from suit under § 1983 and Plaintiff's claims pursuant to §§ 1983 and 1985(3) fail.  Similarly, § 1981 does not abrogate a State's Eleventh Amendment immunity, *see* Cooper v. New York State Dept. of Mental Health, 2001 WL 456348,

at *2 (S.D.N.Y. May 1, 2001) (citing <u>Chinn v. City University</u>, 963 F.Supp. 218, 224 & n. 1 (E.D.N.Y.1997)), and thus Plaintiff's claim pursuant to § 1981 fails.

Additionally, in <u>Pennhurst State Sch. & Hosp. v. Halderman</u>, 465 U.S. 89, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the Supreme Court held that a "federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law . . . [and] conflicts directly with the principles of federalism that underlie the Eleventh Amendment." <u>Id.</u> at 106.

Here, Plaintiffs seek retroactive relief in the form of restitution of benefits alleged to have been wrongfully denied, as well as compensatory damages for the alleged resulting economic loss. Such payments would be payable, in part, from the State Treasury. *See* N.Y.Soc.Serv. §§ 367-b, 368-a (McKinney 2005). The Eleventh Amendment does not permit such relief. A claim for retroactive payments of benefits cannot be brought directly against the State or its officers. *See* <u>Edelman v. Jordan</u>, 415 U.S. 651, 677, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974) ("[A] federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief (citation omitted) and may not include a retroactive award which requires the payment of funds from the state treasury."). In <u>Edelman</u>, the Court explained that "we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' " 415 U.S. at 673, 94 S.Ct. at 1361 (quoting <u>Murray v. Wilson Distilling Co.</u>, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)). The Court added that the "mere fact that a State participates in a program through which the Federal Government provides assistance for the operation by the State of a system of public aid is not sufficient to establish consent on the part of the State to be sued in the federal

courts." Id. The Eleventh Amendment's bar applies to Medicaid benefits payable pursuant to 42

U.S.C. § 1396(a). See Florida Dep't of Health & Rehab. Servs. v. Florida Nursing Home Assoc.,

450 U.S. 147, 149-50, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981).

This immunity, however, is not absolute because the Eleventh Amendment does not bar suits

against state officials in their official capacity for prospective injunctive relief to prevent a

continuing violation of federal law. See Henrietta D. v. Bloomberg, 331 F.3d 261, 287 (2d Cir.2003)

(citing Ex parte Young, 209 U.S. 123, 155-56 (1908)). Nevertheless, Young's exception leaves

untouched the Eleventh Amendment's bar of retrospective declaratory relief against state officials.

Green v. Mansour, 474 U.S. 64, 74 (1985); Ward v. Thomas, 207 F.3d 114, 119-20 (2d Cir.2000).

Similarly, to the extent Plaintiffs seek injunctive or declaratory relief requiring the State to comply

with its statutes and regulations, i.e., 18 NYCRR § 311.3(c)(1)[3], or with its contractual provider

agreement, this relief too is barred. See Pennhurst 465 U.S. at 117, 104 S.Ct. at 917 (explaining that

a federal suit against state officials on the basis of state law contravenes the Eleventh Amendment

when the relief sought and ordered has an impact directly on the State itself).

B.    Statute of Limitations

In § 1983 actions, the applicable limitations period is found in the general or state statute of

---

[3]18 NYCRR 311.3(c)(1) provides: When an inter-district jurisdictional
dispute exists relating to an otherwise eligible applicant for public assistance or
medical assistance, either district may request a fair hearing to determine the
district of responsibility, and the decision shall be binding upon both districts. The
district in which the applicant is found shall be responsible to arrange, provide and
pay for public assistance and care during the period pending resolution of the
inter-district jurisdictional dispute; and shall be reimbursed for all expenditures
authorized in behalf of the applicant by the district subsequently determined
responsible for the provision of assistance and care.

limitations for personal injury actions.  Ormiston v. Nelson, 117 F.3d 69, 71 (2d Cir.1997) (quoting Owens v. Okure, 488 U.S. 235, 249-50 (1989)).  Accordingly, New York's three-year statute of limitations for "unspecified personal injury actions," New York Civil Practice Law and Rules § 214(5), governs § 1983 actions in New York.  Id.  Section 214(5) provides that an action to recover for personal injury must be brought within three years of the date of its accrual.  See id.  The date on which an action accrues is governed by federal law, see Ormiston, 117 F.3d at 71, which provides that an action accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action."  Pearl v. City of Long Beach, 296 F.3d 76, 80 (2d Cir.2002), cert. denied, 538 U.S. 922, 123 S.Ct. 1574, 155 L.Ed.2d 313 (2003).  In the context of Medicaid procedures, the date of accrual is the time when a final determination is issued, or if no determination is issued, the time at which the litigant could have assumed that he or she had received a final determination.  See Hollander v. Brezenoff, 787 F.2d 834 (2d Cir. 1986).

Given that Plaintiffs filed their action on July 17, 1984, the State Defendant argues that any of Plaintiffs' claims which accrued prior to July 17, 1981, are time barred.  The State Defendant concedes that it is impossible to determine with any accuracy when Plaintiffs' claims, including claims for denial of individual Medicaid applications, accrued.  Plaintiffs' amended complaint contains no specific information as to what applications were filed and when, how may were denied and when, how many fair hearing requests were made and when, how many fair hearing decisions were issued and when, or the import of those decisions.  Nonetheless, even without such accuracy, those claims that accrued prior to July 17, 1981 are time barred.

C.    Section 1983 on the Merits

Even if Plaintiffs' § 1983 were not time barred, they would fail on the merits.  To establish

liability under § 1983 plaintiff must satisfy two essential elements: (1) defendants acted under color of state law; and (2) as a result of defendants' actions, plaintiff suffered a denial of his constitutional rights or privileges.  *See* Annis v. County of Westchester, 136 F.3d 239, 245 (2d Cir.1998).  The State Defendant asserts that neither Plaintiffs' allegation that the State Defendant violated state regulations nor their allegation that the state breached its provider agreement implicates any right, privilege or immunity secured by the Constitution or laws of the United States.  The Court need not determine whether the State Defendant violated any applicable state law because "a violation of state law is not cognizable under § 1983." Pollnow v. Glennon, 757 F.2d 496, 501 (2d Cir. 1985) (citing Davis v. Scherer, 468 U.S. 183, 104 S.Ct. 3012, 3019, 82 L.Ed.2d 139 (1984)).

Much of Plaintiffs' claim is based upon alleged violations of state law, specifically 18 NYCRR § 311.3(c)(1), *see supra*.  Plaintiffs allege that the County Defendants violated this state regulatory provision by refusing to accept interim responsibility, *i.e.*, responsibility pending the outcome of the jurisdictional dispute, and that the State Defendant violated this state regulatory provision by condoning the County's action.  Such alleged violations cannot support a § 1983 action. *See* Oberlander v. Perales 740 F.2d 116, 119 (2d Cir. 1984) ("[T]here is no authority anywhere supporting the proposition that a state Medicaid regulation becomes a federal law merely by virtue of its inclusion in a state plan required by federal law.").

Plaintiff's § 1983 claim must also fail to the extent it alleges that the State Defendant, by denying or delaying Medicaid payments, violated the due process clauses of the Fifth and Fourteenth Amendments.  The State Defendant asserts that Plaintiffs' claim alleges conduct that at most raises only an issue of state contract law rather than implicating any federal constitutional right.  Claims based upon alleged violations of provider agreements, the mechanism by which Medicaid payments

flow from the State to providers, are actually claims based on contract violations.  *See* <u>Kaye v. Whalen</u>, 56 A.D.2d 111, 117, 391 N.Y.S.22d 712, 716 (3d Dep't 1977).  "The mere fact that a legally cognizable injury is inflicted by a state official acting under color of state law does not establish a constitutional violation so as to authorize a claim under Section 1983." <u>Rodrigues v. Village of Larchmont</u>, 608 F.Supp. 467, 472 (S.D.N.Y. 1985) (citing <u>Paul v. Davis</u>, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976)).  Such claims are clearly state law claims in tort and contract and do not rise to the level of a constitutional deprivation actionable under Section 1983. <u>Id.</u>

  *D.*  *Standing*

  Plaintiffs derive their claims from a series of denials of unrelated individual medicaid applications by residents of the Masonic Home.  Plaintiffs challenge the validity of the individual denials, and also challenges certain aspects of the fair hearing process provided by the state.  To have standing, a party must allege: (1) a personal injury in fact; (2) a violation of his or her own, not a third-party's, rights; (3) that the injury falls within the zone of interests protected by the constitutional guarantee involved; (4) that the injury is traceable to the challenged act; and (5) that the courts can grant redress for the injury.  *See* <u>Valley Forge Christian College v. Americans United for Separation of Church & State, Inc.</u>, 454 U.S. 464, 472-74, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).  As a general prudential rule, a plaintiff may not claim standing to vindicate the constitutional or statutory rights of third parties.  *See* <u>Secretary of State of Md. v. Joseph H. Munson Co.</u>, 467 U.S. 947, 955, 104 S.Ct. 2839, 2846, 81 L.Ed.2d 786 (1984) (explaining that plaintiffs generally must assert their own legal rights and interests, and cannot rest their claims on the legal rights of third parties).  The requirement that the injury be traceable to the challenged act asks whether a plaintiff is suing under a statute that establishes legal rights which, if invaded, create standing even though

no injury would exist without the statute.  Linda R.S. v. Richard D., 410 U.S. 614, 617, n.3, 93 S.Ct. 1146, 1148, 35 L.Ed.2d 536 (1973).

In the Second Circuit, Medicaid providers such as Plaintiffs do not have standing to bring § 1983 claims.  The Second Circuit has declared Medicaid providers only the "incidental" rather than the "intended" beneficiaries of the Medicaid program.  Oberlander, 740 F.2d at 121 (citing Case v. Weinberger, 523 F.2d 602, 607 (2d Cir. 1975)).  Medicaid participation is a privilege the State may revoke.  Murthy v. Perales, 1989 WL 19136, at *3 (S.D.N.Y. Feb. 27, 1989) (citing Schaubman v. Blum, 49 N.Y.2d 375, 380, 426 N.Y.S.2d 230, 233 (1980) ("As the courts of this State have previously noted, a provider of Medicaid services has no vested right to continued participation in the program; rather, such participation is a privilege which may, in proper circumstances, be revoked.").  Here, the rights Plaintiffs seek to enforce for its own benefit are the recipients' rights to Medicaid eligibility and their rights to fair hearing procedures when eligibility is denied.  Plaintiff lacks standing to pursue such enforcement.

This case presents an additional concern relating to Plaintiffs' standing.  If a person had a cause of action under § 1983, the cause of action survives for the benefit of that decedent's estate where applicable state law creates a right of survival.  See e.g., Johnson v. Morgenthau, 160 F.3d 897, 898 (2d Cir. 1998); Barrett v. United States, 689 F.2d 324, 331 (2d Cir.1982), cert. denied, 462 U.S. 1131, 103 S.Ct. 3111, 77 L.Ed.2d 1366 (1983); see also N.Y. Est. Powers & Trusts Law § 11-3.2 ("No cause of action for injury to person or property is lost because of the death of the person in whose favor the cause of action existed.  For any injury an action may be brought or continued by the personal representative of the decedent").  Only the decedent's personal representative, however, can assert the § 1983 action.  See Estate of Vaiselberg ex rel Vaiselberg v.

Snow, 2003 WL 1878248, at * 1 (S.D.N.Y. Apr 14, 2003); Estate of Masselli v. Silverman, 606

F.Supp. 341, 343 (S.D.N.Y. 1985) ("Section 11-3.2 requires that all surviving actions be brought by

a legally appointed representative.").

Plaintiffs therefore lack standing to assert § 1983 claims on behalf of those residents of their

nursing home who died before Plaintiffs began this action on July 18, 1984.  By the time Plaintiffs

filed their action, all but a small number of the residents on whose behalf Plaintiff purports to assert

§ 1983 claims were then dead.  Although Plaintiffs had power of attorney for these residents, the

death of the principal instantaneously revokes the agent's authority to act, *see* Etterle v. Excelsior

Ins. Co. of New York, 74 A.D.2d 436, 428 N.Y.S.2d 95 (1980), and thus Plaintiffs are not their

personal representatives and lacks standing to assert § 1983 claims on behalf of all persons who died

before this action was commenced.  Similarly, Plaintiffs lack standing to assert § 1983 claims on

behalf of the few nursing home residents who were living when this action began, because "[a] party

may not assert a civil rights claim on behalf of another." McCloud v. Delaney, 677 F.Supp. 230, 232

(S.D.N.Y. 1988).

## IV.    The County Defendants–John Plumley, Michael J. Nassar and Oneida County

### A.    *The Oneida County Commissioner of Social Services is an Agent of the New York State Department of Social Services*

Under New York law, neither Oneida County nor Plumley plays a role in administering the

Medicaid program in Oneida County.  The office of County Commissioner of Social Services is

created by N.Y. Soc. Serv. Law § 65(3) which provides that "[t]he county commissioner shall act

as the agent of the department in all matters relating to assistance and are administered or authorized

by the town public welfare officers."[4]   Thus, the County Commissioner acts as an administrative agent of the State, and not of the County.  *See* Henrietta D. v. Bloomberg, 331 F.3d 261, 266 (2d Cir. 2003) (citing Beaudoin v. Toia, 45 N.Y.2d 343, 408 N.Y.S.2d 417, 380 N.E.2d 246, 247 (1978) ("In the administration of public assistance funds, whether they come from Federal, State, or local sources, the authority and responsibility is that of the county commissioners of social services, not the counties; the local commissioners act on behalf of and as agents for the State.")).  Moreover, "[w]hile the local agencies operate the benefits system, including processing applications for benefits and making eligibility determinations, the state agency is required to "supervise all social services work."  Id. (citing N.Y. Soc. Serv. Law § 20(2)(b)).  Given this statutory structure, it is clear that the New York State Department of Social Services is responsible for overseeing the County Commissioner, and therefore, Oneida County and Plumley cannot be held accountable for the actions of the County Commissioner.

> B.    *Plumley had no Personal Involvement in the Acts of which Plaintiffs Complain*

In their attempt to establish Plumley's liability, Plaintiffs mistakenly rely upon a theory of respondeat superior.  Under § 1983, Plaintiffs must allege some personal involvement by Plumley in the claimed misconduct.  It is well settled in this Circuit that the personal involvement of defendants in the alleged constitutional deprivation is a prerequisite to an award of damages under § 1983 and that the doctrine of respondeat superior is insufficient.  Gaston v. Coughlin, 249 F.3d 156, 164 (2d Cir.2001); Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir.1995).  Personal involvement may be shown by evidence that:

--------------------------------------------------------

[4]"Department" refers to the New York State Department of Social Services. *See* N.Y. Soc. Serv. Law § 2.

> (1) defendant directly participated in the alleged wrongdoing, (2) defendant failed to remedy the wrong after being informed via a report or appeal, (3) defendant created a policy or custom under which unconstitutional acts occurred, or allowed the continuance of such policy, (4) defendant was grossly negligent in supervising subordinates who committed the illegal acts, or (5) defendant exhibited deliberate indifference by failing to act on information indicating unconstitutional acts were occurring.

Back v. Hastings On Hudson Union Free School Dist., 365 F.3d 107, 127 (2d Cir. 2004). Merely holding a position of authority or supervision is not enough. See, e.g., Black v. Coughlin, 76 F.3d 72, 74 (2d Cir. 1996).

Here, Plaintiffs, have failed to sufficiently allege any personal involvement of Plumley, personal or otherwise, in the claimed denial of Medicaid benefits at issue. Plaintiffs' amended complaint contains but a single allegation specifically referencing Plumley, which states that as Oneida County Executive, Plumley "is entrusted with supervisory power, direction and control over . . . the Oneida County Department of Social Services." 84-CV-992 , Am. Compl. at ¶ 11. The balance of the amended complaint refers only to "the County defendants" or "the defendants" without differentiating among the County, Plumley, or Nassar. 84-CV-992, Am. Compl. at ¶¶ 1, 3-5, 29, 33-42, 45-46, 49, 51-52, 54, 56, 58-60, 62, 64, 67. Morever, of the very few alleged actions taken by the County Defendants, several involve events which occurred before Plumley took office as Oneida County Executive in 1983. 84-CV-992, Am. Compl. at ¶¶ 35-36, 39. The amended complaint does not sufficiently allege that Plumley "directly participated" in the alleged denial of benefits to residents of the Masonic Home, that he created a policy or custom under which unconstitutional acts occurred, that he failed to remedy the wrong after learning of the violation, or that he was grossly negligent in supervising subordinates who committed the illegal acts or allowed the continuance of such policy.

C.      *Breach of Provider Agreement*

In their Second Claim for Relief, Plaintiffs allege that the "wrongful acts, practices, and omissions of the County and State defendants constitute a breach by said defendants of the Provider Agreement."  Plaintiffs, however, further allege that the "Masonic Home has been a party to a Provider Agreement with the New York State Department of Social Services" and that the "Provider Agreement obligates the New York State Department of Social Service to make payments to the Masonic Home."  84-CV-992, Am. Compl. at ¶ 27.  None of the County Defendants are a party to any Provider Agreement with the Masonic Home, which negates any liability Plaintiffs wish to impose.

Even assuming *arguendo* that the County were a party to the Masonic Home's Provider Agreement, Plaintiffs miss the mark because there is no cause of action by a provider for the breach of a Provider Agreement.  *See* Hollander, 787 F.2d at 838 (finding that the "district court correctly concluded that Congress–when enacting section 1396a(a)(27) of the Social Security Act–did not aim to create a contract cause of action for the benefit of providers, but simply sought to facilitate the processing and transmission of information by providers supplying services under the Medicaid plan" (citation omitted)).

D.      *Plaintiffs are not Entitled to Punitive Damages Against County Defendants*

In their Fourth Claim for Relief, Plaintiffs alleges that they are "entitled to an award of punitive or exemplary damages against the County defendants in an amount . . . not less than $10 million."  84-CV-992, Am. Compl. at ¶ 60.  "It is settled that punitive damages cannot be recovered from a municipal entity or municipal employees sued in their official capacity."  Ivani Contracting Corp. v. City of New York, 103 F.3d 257, 262 (2d Cir.), *cert. denied*, 520 U.S. 1211, 117 S.Ct. 1695,

137 L.Ed.2d 821 (1997) (holding defendant municipal officers, sued only in their official capacity, enjoyed the same immunity from punitive damages as did the defendant municipality).   Plaintiffs' claim for punitive damages against the County and Plumley and Nassar in their official capacities cannot stand, and the County Defendants are immune from liability for such damages.

      *E.*     *Remedial Fines*

In their Fifth Claim for Relief, Plaintiffs allege that "to assure the future compliance of the County and State defendants with applicable laws and regulations, plaintiff[s are] entitled to an order requiring the County and State defendants to pay the Masonic Home for each applicant a fine of one hundred dollars ($100) to be credited to the account of such applicant for each week or fraction thereof after an initial decision denying or delaying payment of Medicaid benefits for such applicant."   84-CV-992, Am. Compl. at ¶ 62.   Plaintiffs do not specify whether they seek fines for past conduct or merely prospectively (should such alleged denials or delays occur in the future), but either way, Plaintiffs' claim fails.

The remedial fines that Plaintiffs seek cannot be retrospective and are imposed only prospectively as a contempt remedy for the violation of an existing court order.   *See*, *e.g.*, Alexander v. Hill, 549 F.Supp. 1355, 1359, 1361 (W.D.N.C. 1982) (noting its power to impose a remedial money sanction on a state agency in order to secure compliance by the agency with the court's orders and explaining "[t]hat in view of defendants' protracted non-compliance with previous court orders, but principally to insure future compliance," the court ordered defendants to pay a remedial fine).   Here, there is no existing court order as to any of the County Defendants upon which the court might impose remedial fines.

      *F.*     *Plaintiffs' Claim for Delay or Consequential Damages*

Plaintiffs seek "delay" or consequential damages for the allegedly lengthy delays in receiving Medicaid reimbursement.  Plaintiffs argue that the alleged delays forced them to cash in certificates of deposit paying sixteen-and-a-half percent interest in order to cover the Masonic Home's operating expenses.  Plaintiffs' claim fails.

The Supreme Court has rejected the recovery of consequential damages even for egregious delays in the payment of disability benefits under Title II of the Social Security Act.  Schweiker v. Chilicky, 487 U.S. 412, 414, 428-29, 108 S.Ct. 2460, 101 L.Ed.2d 370 (1988) (concluding consequential damages unavailable as a matter of law to remedy the improper denial and months-long delay of Social Security disability benefits allegedly resulting from violations of due process by government officials who administered the federal Social Security program).  Similarly, Title XIX of the Social Security Act gives no indication of Congress' intent to authorize "delay" or consequential damages.

G.    Qualified Immunity

Plumley and Nassar argue that the doctrine of qualified immunity shields them from suit and/or liability based on the performance of discretionary functions in their official capacities unless their actions violated clearly established federal law.  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) ("We therefore hold that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.").

A claim of qualified immunity ordinarily involves a two-step inquiry.  First, the court must answer whether the facts alleged, taken in the light most favorable to the party asserting the injury,

show that the official's conduct violated a constitutional right.  *See* <u>Saucier v. Katz</u>, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). "[I]f a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." <u>Id.</u> "The relevant, dispositive inquiry in determining whether a [federal] right is clearly established is whether it would [have] be[en] clear to a reasonable offic[ial] that his conduct was unlawful in the situation he confronted." <u>Id.</u> at 202, 121 S.Ct. 2151.  This inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." <u>Id.</u> at 201, 121 S.Ct. 2151.  Nonetheless, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." <u>Hope v. Pelzer</u>, 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).  The essence of the principle is that "[o]fficers sued in a civil action for damages under 42 U.S.C. § 1983 have the same right to fair notice as do defendants charged with [a] criminal offense." <u>Id.</u> at 739, 122 S.Ct. 2508.  In assessing a qualified immunity claim, the Court considers: (1) whether the right in question was defined with "reasonable specificity"; (2) whether the decisional law of the Supreme Court and the applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." <u>Back v. Hastings on Hudson Union Free Sch. Dist.</u>, 365 F.3d 107, 129-30 (2d Cir. 2004) (quoting <u>Jermosen v. Smith</u>, 945 F.2d 547, 550 (2d Cir.1991), *cert. denied*, 503 U.S. 962, 112 S.Ct. 1565, 118 L.Ed.2d 211 (1992)).

When a defendant attempts to establish qualified immunity on a motion to dismiss, he must demonstrate that the facts supporting the defense appear on the face of the complaint.  *See* <u>Citibank, N.A. v. K-H Corp.</u>, 968 F.2d 1489, 1494 (2d Cir.1992). "[A]s with all Rule 12(b)(6) motions, the motion may be granted only where 'it appears beyond doubt that the plaintiff can prove no set of

facts in support of his claim that would entitled him to relief.'" K-H Corp., 968 F.2d at 1494.

As discussed above, Plumley has no policymaking role as a matter of law with respect to either the provision or distribution of Medicaid benefits to residents of the Masonic Home, and he is entitled to qualified immunity. The Court dismisses the claims brought against Plumley in his individual capacity.

In their Amended Complaint's first claim for relief, Plaintiffs allege that Nassar, among others, violated Plaintiffs' rights

> by denying or delaying the payment of Medicaid benefits to applicants through (a) backlogs in fair hearing schedules, (b) initial denials premised on reasons that have previously been held to be improper or insufficient in prior fair hearings, (c) initial denials premised on reasons that have no basis in the facts of the particular case or in the applicable regulatory requirements, (d) in cases of interdistrict jurisdictional disputes,  initial denials based on the applicant's alleged out-of-county residence where the applicant is otherwise eligible for Medicaid benefits, and (e) the practice of failing to make payments in a timely manner after fair hearing decisions and/or stipulations.

84-CV-992, Am. Compl. at ¶ 45.   The County Defendants argue that none of these allegations involve a violation of any of Plaintiffs' clearly established federally protected rights by Nassar, and that Nassar cannot be held individually liable.  With respect to the alleged backlogs in fair hearing schedules, Nassar, as Oneida County Commissioner of Social Services had no role in determining the date of a fair hearing.  See N.Y. SOC. SERV. LAW § 22(1) ("The *department* shall review the case and give such person an opportunity for a fair hearing thereon." (emphasis added)).  Furthermore, Plaintiffs' allegation based upon interdistrict jurisdictional disputes rests solely upon 18 NYCCR § 311.3(c)(1), a state regulation governing disputes between counties within New York State.  Even assuming *arguendo* that Nassar violated the regulation, such violation does not amount to a violation

of any of Plaintiffs' rights clearly protected by federal law and there is no federal right to vindicate.  As to Plaintiffs' allegation regarding the alleged practice of failing to make payments in a timely manner after fair hearing decisions and/or stipulations, as the Court explained above, Plaintiffs cannot recover damages to remedy the failure to distribute payments in a timely manner.  The Court dismisses Plaintiffs' Amended Complaint against Nassar in his individual capacity

## V.   Motion to Compel Answers to Interrogatories and the Production of Documents– Rule 37(a)

Rule 37(a) provides that a party may move for an order compelling answers to their interrogatories.  Plaintiffs have failed to answer the interrogatories, have failed to object to the interrogatories, and indeed have failed to file any opposition to this motion to compel its answers to the interrogatories.  The Court's above rulings, however, render this motion moot.

## CONCLUSION

**WHEREFORE,** after careful consideration of the file in this matter including the parties' submissions and the applicable law, the court hereby **GRANTS** the Federal Defendant's motion for judgment on the pleadings; the State Defendant's motion for judgment on the pleadings and the County Defendants' motions for partial judgment pleadings whereby the Court **DISMISSES** the Amended Complaints in 84-CV-991 and 84-CV-992 in their entirety for lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted as to all Defendants.

**IT IS SO ORDERED.**

Dated: June 7, 2006
Syracuse, New York

Howard G. Munson
Senior  U.S. District Judge